[No. 7239-4-II. Division Two. October 27, 1983.]

COLUMBIAN PUBLISHING COMPANY, *Respondent,* v. THE CITY OF VANCOUVER, ET AL, *Appellants.*

*Jerry F. King, City Attorney,* and *Larry J. Knudsen, Senior Assistant,* for appellants.

*Michael J. Killeen* and *Davis, Wright, Todd, Riese &*

*Jones,* for respondent.

WORSWICK, A.C.J.—We are asked to decide whether particular exemptions contained in the Public Disclosure Act will excuse the City of Vancouver's refusal to release certain documents to The Columbian, a daily newspaper. The trial court held that the newspaper was entitled to access to the documents. We agree that none of the claimed exemptions apply, and affirm.

On July 19, 1983, the Vancouver Police Association—the local police union—met and voted no confidence in the chief of police, Leland Davis. The VPA immediately issued a press release expressing a number of "concerns" about the chief's policies and management style and calling on city management to investigate the "concerns." The officers alleged that Chief Davis is "aloof," lacks motivational and communication skills, "shows no respect for his employees," has alienated other law enforcement agencies, and is a "task master, not a people master." As a result, morale in the department was alleged to be "at an all–time low." The VPA gave a copy of the press release to Paul Grattet, the city manager, and shortly afterward at his request provided him with 13 statements of individual officers detailing their specific complaints. The statements were confidential and anonymous, but Mr. Grattet was given a key to enable him to identify the writers so that he could conduct follow–up interviews with them and discuss the complaints more effectively with the chief.

The Columbian learned of the 13 statements and became interested in their contents. A reporter asked Mr. Grattet for copies. He refused, citing three exemptions in the Public Disclosure Act, RCW 42.17. The Columbian sued to compel disclosure of the documents. The Superior Court found that none of the exemptions applied and ordered disclosure. The City appealed. We stayed enforcement of the order[1] and accelerated argument of the merits. We

---

[1] Pending the outcome of an appeal, an appellate court will grant a stay upon

review the City's claim of exemptions de novo. RCW 42.17-.340(2).

The Public Disclosure Act is to be liberally interpreted, and its exceptions narrowly construed, so as to promote full access to public records. RCW 42.17.010(11); *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978). The police officers' memoranda are "public records" as broadly defined by RCW 42.17.020(26);[2] the City is an "agency" within the meaning of the act;[3] the City must, therefore, make the documents available for public inspection and copying unless a statutory exemption applies. RCW 42.17.260(1).[4]

The City relies on three exemptions from public inspection and copying provided in RCW 42.17.310(1). We will discuss each in turn.

## THE PERSONAL PRIVACY EXEMPTION

The "personal privacy exemption" is expressed in RCW

---

a showing that the matter on review presents debatable issues, and the equities require that the status quo ante be maintained in order to preserve the fruits of the appeal in the event it should prove successful. *Kennett v. Levine,* 49 Wn.2d 605, 304 P.2d 682 (1956); *Shamley v. Olympia,* 47 Wn.2d 124, 286 P.2d 702 (1955); *see* Adams, *Stays,* 33 Wash. State Bar News, Aug. 1979, at 36.

[2]RCW 42.17.020(26) provides:
"'Public record' includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics."

[3]RCW 42.17.020(1) provides:
"'Agency' includes all state agencies and all local agencies. 'State agency' includes every state office, department, division, bureau, board, commission, or other state agency. 'Local agency' includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency."

[4]RCW 42.17.260(1) provides:
"Each agency, in accordance with published rules, shall make available for public inspection and copying all public records. To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing."

42.17.310(1)(b):

> (b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.

The issue under this exemption is whether disclosure would violate the privacy rights of either Chief Davis or the 13 police officers. We are directed to "take into account the policy of [the Public Disclosure Act] that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.17-.340(2). The trial court found that this exemption does not apply because the records relate to the job performance of a public official (the chief), although the court made minor deletions of "personal" information as contemplated by RCW 42.17.310(2) ("exemptions . . . shall be inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought").

█ The right of privacy protected by this exemption is equivalent to that protected by the common law of torts. *Hoppe,* 90 Wn.2d at 135–37. Material is exempt from disclosure when it is so personal in nature that disclosure would be highly offensive to a reasonable person, and of no legitimate concern to the public. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978); *Laborers Int'l Union, Local 374 v. Aberdeen,* 31 Wn. App. 445, 642 P.2d 418 (1982).

We agree with the trial court's disposition of this issue. The statements entirely concern the chief's professional performance—his handling of various situations that have come before him as leader of the department, his methods in making transfers of duty and other personnel assignments, his handling of grievances, his allegedly poor relationships with other law enforcement agencies, his management style and demeanor toward certain employees and the like. To the extent that the complaints occasionally

shade into personal habits, they are nonetheless relevant to an assessment of the chief's job performance. Disclosure of the statements might embarrass the chief but would not violate his right of privacy within the meaning of this exemption.

The same is true for the privacy rights of the officers who made the statements. Although it is true that any close observer of Vancouver police activities will be able to ascertain the identities of several of the officers from the events related, we find nothing of a highly offensive personal nature in them. *Cf. State Human Rights Comm'n v. Seattle,* 25 Wn. App. 364, 607 P.2d 332 (1980) (upholding refusal to release answers to highly personal questions on a job application form). The officers knew that their statements might be shown to the chief and to those assisting in the investigation of the complaints.

 Moreover, the VPA has waived any claim of privacy by its individual members by choosing to "go public" with *its complaints as it did. One cannot go to the press with vague complaints about a public official's job performance* and then hide behind a claim of personal privacy when disclosure of specifics is requested.

### THE INVESTIGATIVE AGENCY EXEMPTION

The "investigative agency exemption" is stated in RCW 42.17.310(1)(d):

> (d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

 This exemption fails to apply for several reasons. First, the City of Vancouver, as represented by its manager who is investigating the job performance of a person under his supervision, is not functioning as an "investigative, law enforcement, [or] penology agenc[y]" as the exemption requires. *Cf. Laborers Int'l Union, Local 374 v. Aberdeen,*

31 Wn. App. at 448 (a city is not acting as an "investigative agency" when administering a public works contract); *Ashley v. State Pub. Disclosure Comm'n,* 16 Wn. App. 830, 834, 560 P.2d 1156 (1977). The City argues that its manager, Mr. Grattet, is representing an investigative agency through his role as overseer of the police department. This brings us to our second reason for rejecting this exemption. We recognize that the Vancouver Police Department, when carrying out its law enforcement responsibilities, is such an agency. But even when we recognize Mr. Grattet's ultimate, but tenuous, law enforcement supervisory duties, in this case he was certainly not conducting the kind of investigation that the exemption requires. As we said in *Laborers Int'l Union, Local 374 v. Aberdeen,* 31 Wn. App. at 448, the "records were not compiled as a result of a specific investigation focusing with special intensity upon a particular party." This is purely a personnel matter, not an investigation in the intended sense, *i.e.,* one designed to ferret out criminal activity or to shed light on some other allegation of malfeasance. Finally, the nondisclosure of the statements was not, as we have said, essential to the protection of anyone's right to privacy, nor was it essential to effective law enforcement as the exemption requires. Construing this exemption narrowly, as again we must, we find no error.

### The Intra–Agency or Deliberative Process Exemption

The so-called "deliberative process exemption" appears in RCW 42.17.310(1)(i):

> (i) Preliminary drafts, notes, recommendations, and intra–agency memorandums in which opinions are expressed or policies formulated or recommended except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action.

The purpose of this exemption is to allow frank and uninhibited discussion during the decisionmaking process. In relying on this exemption, the agency must show that documents contain predecisional opinions or recommenda-

tions of subordinates expressed as part of the deliberative process; that disclosure would be injurious to the deliberative or consultative function; that disclosure would inhibit the flow of recommendations, observations, and opinions; and finally, that the exemption is claimed only for documents reflecting policy recommendations and opinions and not for the raw factual data upon which a decision is based. *Hoppe,* 90 Wn.2d at 132–33.

The exemption does not apply here. The officers' statements are not memoranda exchanged among policy makers within an agency. They are simply complaints of a factual nature intended to be acted upon by decision makers higher up. They describe ways in which the chief allegedly mismanaged various situations and express the writers' lack of confidence in the chief, but they do not purport to come from those in a position to recommend a course of action. Under *Hoppe* these statements are clearly not exempt.

This case is readily distinguishable from *Hafermehl v. UW,* 29 Wn. App. 366, 628 P.2d 846 (1981), a case involving college faculty promotion, because there the exemption was invoked to protect the contents of letters of opinion and recommendation regularly considered as part of the promotion process. Regular peer review as part of the academic tenure/promotion process is significantly different from the situation here, which involves the one–time submission of raw facts by line officers who have neither a direct nor an advisory role in deciding whether or not to discipline the chief of police.

The City makes one further argument: that nondisclosure of these statements is consistent with RCW 42.30.110, the Open Public Meetings Act of 1971, which permits a public body to go into closed, executive session to consider personnel matters and complaints against a public officer or employee. We need not consider this argument, as we find no indication that it was presented in the trial court. Moreover, the fact that such closed meetings may be held by policy makers is not inconsistent with the legislative determination in the Public Disclosure Act that the facts on

which their personnel decision is based will be subject to disclosure unless the requirements of an exemption are met.

## CIVIL DAMAGES AND ATTORNEY'S FEES

When a party seeking access to public records prevails in court against a resisting agency, RCW 42.17.340(3) directs the court to award all costs, including reasonable attorney's fees, to the prevailing party, and gives the court discretion to award civil damages of up to $25 per day for each day access was denied. The trial court awarded attorney's fees, costs, and damages under the statute. The City challenges the award of damages, arguing that its claim of exemptions was bona fide and in good faith. An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 599 P.2d 1289 (1979). We find no abuse of discretion here. The award is not necessarily a punishment of the City, but simply a reflection of the fact that where the act affords access with only narrow exceptions, the court may impose sanctions in favor of the party whose claim of access has been vindicated. The City's claim of exemptions is not frivolous, but that is not the test. The City failed to sustain its burden of proving any exemption, and the court acted within the discretion conferred by statute. We decline, however, to award further damages on appeal in this case.

The City does not challenge the award of attorney's fees and costs at trial. The Columbian claims further fees in the amount of $2,500 for responding to this appeal and has complied procedurally with RAP 18.1. We find the request reasonable and grant the motion.

Judgment affirmed. Respondent is awarded its fees on appeal in the amount of $2,500.

PETRIE and REED, JJ., concur.